SMITH et al. v. ROBERTS.

(Circuit Court of Appeals, Third Circuit. April 26, 1895.)

No. 7.

DEMURRAGE—DISCHARGE "WITH ALL DISPATCH."

Delay arising from the fact that the charterers have a number of other vessels in port, whose cargoes of sugar they are unloading, and to which they chose, for their own convenience or business purposes, to furnish all the available weighers, constitutes a failure to give the vessel the dispatch to which she was entitled under a charter which required her discharge "according to the custom of the port of discharge, with all dispatch."

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel in personam by Griffith Roberts, master of the steamship Stuart Prince, against Pierre J. Smith and Charles Schipper, trading as Smith & Schipper, to recover demurrage for delay in the discharge of cargo. The district court rendered a decree for libelant, and the respondents appealed.

In the district court the following opinion was filed by BUTLER, District Judge:

It is admitted that this case is governed by Smith v. Harrison (recently decided by this court) 50 Fed. 565. I will not therefore enter on a statement of the facts, or a discussion of them. The vessel was not given the dispatch contracted for, and the respondents are answerable in damages. A commissioner will be appointed to decide the amount. In this case modern scales were used for weighing, but the cargo was not taken as rapidly as the contract required. I do not understand it to be denied that there was delay, but it is asserted in justification that this arose in part from failure of the government to furnish necessary weighers, and in part from wet weather. Without considering whether the cargo, or a part of it rather, should not have been taken on the wharf, in advance of weighing if such scarcity existed, or whether proper efforts were made as early as should have been done, or whether an unavoidable scarcity would excuse the respondents' failure to comply with the contract, it seems to be a sufficient answer that the respondents had an abundance of weighers, but unfortunately for the libelant found other use for them. Unmindful of their obligations to him, they assumed numerous similar obligations to other vessels arriving at the same time; and if they were unable to afford him more weighers it may be attributed to this cause. It was their duty to be prepared to take the cargo with the dispatch described—"all possible dispatch"—to leave no reasonable effort untried to be so prepared. To place obstacles in the way of carrying out the contract would be a plain disregard of their duty, and delay arising from such obstacles they would necessarily be responsible for. Of course they were not required to suspend their ordinary business by abstinence from entering into such contracts with others. But they were bound to remember the facilities for discharging such cargoes and their previous undertakings, and contract accordingly.

In addition to the authorities cited in the former case (Smith v. Harrison) section 614 of Carver on Carriers is referred to.

G. Heide Norris and Henry R. Edmunds, for appellants.

Horace L. Cheyney and John F. Lewis, for appellee.

Before ACHESON, Circuit Judge, and GREEN and BUFFINGTON, District Judges.

ACHESON, Circuit Judge. By the terms of the charter party, the cargo of the Stuart Prince was "to be discharged, according to the custom of the port of discharge, with all dispatch." The district court held that the vessel was not given the dispatch contracted for, and that the respondents were liable for demurrage at the stipulated rate for the undue detention; and it was decreed that the libelant recover demurrage for 3 days and 10½ hours. The appellants, we think, have no good reason to complain of this result. Under the proofs, the appellants were answerable for the demurrage allowed, upon any admissible construction of the above-quoted clause of the charter. In fixing the amount of the demurrage, the commissioner made allowance for the wet weather which interrupted the unloading of the vessel; and, upon a careful consideration of the evidence, we are entirely satisfied that the other delay in the discharge of the cargo was not owing to any custom of the port of Philadelphia, but was caused solely by the unjustifiable conduct of the consignees. There was no lack of weighers in any such sense as would excuse the respondents. The consignees at that time had in port a number of other vessels, whose cargoes of sugar they were unloading, and, for their own convenience or business purposes, they chose to furnish to those vessels weighers who might have been employed in discharging the Stuart Prince, and should have been so used, in order to give that vessel the dispatch to which she was entitled under her charter party.

The decree of the district court is affirmed.